UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ANTHONY RAY FISHER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 3:12-CV-183 JD |
| | ) |
| SUPERINTENDENT, | ) |
| | ) |
| Respondent. | ) |

OPINION AND ORDER

Anthony Ray Fisher, a *pro se* prisoner, filed this habeas corpus petition challenging a prison disciplinary proceeding. [ECF No. 1.] On October 14, 2011, a hearing officer at Indiana State Prison ("ISP") found Fisher guilty of battery with a weapon under cause number ISP 11-09-0438. [ECF No. 12-10 at 1.] The charges were initiated on September 28, 2011, when Officer P. Duncan wrote a conduct report stating as follows:

> On 09/28/11 approx 355am I Officer P. Duncan observed Offenders Fisher #915292 and offender Thompson #121935 [a]ggressively wrestling and locked together in a violent manner next to cube E-E-30. I then ordered them to STOP at which point offender Fisher fled the scene and hid in cubical E E 50 lying down in another offender's bed until I found him. He was then escorted to the front of the East side when he failed to follow my orders to stop and went into the bathroom, Thompson followed him and started to punch and wrestle with each other in the East bathroom.

[ECF No. 12-1.] A witness statement was also obtained from Officer K. Fahey, who stated as follows:

> During the end of breakfast lines, at approx 3:55am, Officer P. Duncan notified me that there was an incident going on in the east side of E-dorm. I, Ofc. Fahey came in from the doorway of E-dorm and turned all the lights on to see what was happening. I notified checkpoint 2 to report to E-dorm. Officer P. Duncan then notified me that there was an offender hiding in someone elses cube with blood on him. I proceeded to the east side of the dorm and Offender Fisher 915292 had fled the bathroom area. When I arrived to the bathroom area, I found Offender Thompson 121935 fighting with offender Fisher 91592 when I separated them and cuffed Offender Thompson.

Sgt. Potts arrived on the unit and cuffed Offender Fisher. Both offenders were secured and taken to medical.

[ECF No. 12-3 at 1.] Sgt. T. Potts also submitted the following witness statement:

Ofc. Fahey called me on the radio ASAP to Signal 8 E-Dorm at approx. 3:55 A.M. When I arrived on scene, I saw Offender Thompson #121935 handcuffed behind his back. Thompson's clothes were bloody and he had a gash on his forehead. I escorted Thompson #121935 E-E-30 to MSU for treatment.

[ECF No. 12-3 at 2.] Officer R. Conrad also submitted the following witness statement:

On 9-28-11 at 4:05 am. I Officer R. Conrad . . . was called to E-Dorm per Sgt. Pott's ASAP. As I Ofc. Conrad arrived at E-Dorm Sgt. Potts had Offender Thompson #121935 E-Dorm cube E-30 in cuffs and was taken to hosp. for his cut on forehead. Sgt. Potts said to get other offender that was in the fight. Entering unit Ofc. K. Fahey OIC direct me to east side bathroom area. Offender Fisher #915292 was east side bathroom floor. Blood on his shirt and cut by his left eye. I Ofc. R. Conrad cuffed and escorted Offender Fisher #915292 to custody hall to keep both offenders separated. Also pictures were taken of offender wounds, crime scene E-Dorm bathroom area east-side and both offenders' cubes E-Dorm E-30 and E-44 by Lt. Dustin. Both offenders were seen by Nurse Suszan Kirche and treated. 5:35 end of incident[.]

[ECF No. 12-3 at 3.] Finally, Lt. C. Dustin submitted the following witness statement:

On 9/28/2011 at approx. 355 am Officer Faye advised me to signal 8 E Dorm for assistance. Upon arrival I observed Offender Thompson #121935 being escorted of E Dorm with a Large Gash out of his forehead. Upon entering the unit Offender Fisher #915292 was already cuffed and being escorted out as well. I then reported to cubical E-E-30 where I found a large amount of blood on the floor and on the bed, and blood spatters that reached into the cubes across from EE-30. Upon further investigation I found a brick lying next to a large area of blood at the head of the bed with blood on the brick. The East side and the West side was evacuated to the day room to preserve the area and all evidence.

In the bathroom garbage can was found two plastic bags, One containing a jacket and leather gloves both containing large amounts of blood on them. (jacket had Offender Fisher's name in it #915292) the second bag had a pair of pants in them with blood on it and inside written in black marker said: "FISH". At approx 515 am the area was turned over to Mr. Pomeroy IA Lead Investigator. On my way out of E Dorm Offender Thompson neighbor Offender Bell #15819 EE14 made the comment "that White boy wasn't messing around[.]"

2

[ECF No. 12-3 at 4.] Photos of the brick and bloody clothing were taken, as was a photo showing the injury to Thompson's forehead; the photos were sent to Fisher through the prison mail. [ECF No. 12-2 at 1; ECF No. 12-4 at 1-7.]

The screening report reflects that Fisher was screened on October 5, 2011, pled not guilty, requested a lay advocate, and requested a review of camera evidence; DNA testing "of all bodily fluids pursuant to alleged offenses"; "chain-of-command" reports showing "how the evidence traveled"; fingerprint evidence; photos; various executive directives; and "All Constitutional Amendments and the U.S. Laws enacted as Prisoner Right(s)." [ECF No. 12-2 at 1.] On October 7, 2011, Fisher sent correspondence to the screening officer which he stated pertained to "ISP 11-09-0438 and ISP 11-09-0439."[1] [ECF No. 12-11 at 11.] In the letter he asked for certain correctional officers to be present at his hearing; for a review of camera evidence; for information regarding "weapons charges and violent offenses" committed by "gang members and affiliates living in E-dorm as of 9/27/11 and 9/28/11"; for fingerprint analyses, lie detector tests, and DNA testing "of all bodily fluids pursuant to alleged offenses"; for "chain-of-command" reports showing "how the evidence traveled"; for various executive directives and "All Constitutional Amendments and the U.S. Laws enacted as Prisoner Right(s)." [ECF No. 12-11 at 10-11.] He also submitted a detailed list of questions he wanted to ask the officers, including whether any of the officers actually saw him strike Thompson with the brick. [*Id.* at 1-8.]

---

[1] In ISP 11-09-0439, Fisher was found guilty of possessing a dangerous weapon when officers packing up his cube on September 28, 2011 (the same day as the fight with Thompson) discovered a 10-inch metal pipe among his belongings. His federal habeas petition challenging the guilty finding in that case was recently denied. *See Fisher v. Superintendent*, 3:12-CV-241-TS (N.D. Ind. ord. dated Jan. 18, 2013).

Prior to the hearing, the hearing officer reviewed the surveillance video, which she summarized as follows: "While viewing the camera I am not able to see the incident. It started in cube EE30 at this time the light[s] were still out. The incident moved to the bathroom where no camera[s] are located." [ECF No. 12-9.] Fisher also obtained statements from four fellow inmates; none of them had seen the altercation, but they attested to Fisher's general character as a "fair person" who helped others and avoided fights. [ECF No. 12-6 at 1-4.]

On October 14, 2011, the hearing officer conducted a hearing on the charge. [ECF No. 12-10 at 1.] Fisher was represented by a lay advocate pursuant to his request. [*Id.*; ECF No. 12-5.] The hearing officer's report indicates that Fisher had "no comment" when asked for a statement. [ECF No. 12-10 at 1.] The hearing officer considered staff reports, witness statements, the video, the photos, the clothing found with Fisher's name on it, as well as the statements Fisher submitted from other inmates. [*Id.*] She found him guilty, stating, "Even though a weapon was not found on Fisher, the extent of injuries and amount of blood at the scene makes me believe a weapon was involved. I believe the C/R to be true and accurate and therefore find him guilty. Fisher did make me aware he was injured in the altercation by showing me 4 stitches he received on his scalp." [*Id.*] She noted that Fisher had requested other evidence and witnesses, and she explained the reasons why she was denying each of his requests. [*Id.* at 2-3.] His request for fingerprints, lie detector tests, and DNA testing were denied because no such evidence was available. [*Id.* at 2.] His request for medical records was denied because Thompson's medical records were confidential, although a photo showing his injury had been provided. [*Id.*] None of the officers he requested as witnesses were working at the time of the hearing, although the statements of Officer Duncan, Lt. Dustin, Officer Conrad, and Sergeant Potts were all considered. [*See id.* at 3.] Fisher requested that the hearing be

videotaped, but no equipment was available to tape the hearing. [*Id.* at 2.] As a result of the guilty finding, Fisher lost earned-time credits and served time in disciplinary segregation. [*Id.* at 1.] He appealed to the facility head and to the final reviewing authority, but his appeals were denied. [ECF No. 12-12 at 1-10.] Thereafter, he filed this federal petition. [ECF No. 1.]

When a due process liberty interest is at stake in prison disciplinary hearings, the Fourteenth Amendment guarantees prisoners certain procedural due process protections: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence in defense when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy due process, there must also be "some evidence" to support the disciplinary decision. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Fisher first claims that he was denied adequate representation by his lay advocate. [ECF No. 1 at 3.] Due process requires the assistance of a lay advocate only when the inmate is illiterate or when "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." *Wolff*, 418 U.S. at 570. Fisher's filings in this case demonstrate that he is literate (a point he acknowledges in his traverse [ECF No. 16-1 at 2]), and fully capable of making cogent arguments on his own behalf. There was also nothing particularly complex about the charge. Instead, the sole issue was whether Fisher assaulted the other inmate. The Seventh Circuit found the assistance of a lay advocate unnecessary in a case presenting more complex issues than an assault. *See Miller v. Duckworth*, 963 F.2d 1002, 1004 (7th Cir. 1992) (charge of escape not unduly complex as to require representation by lay

5

advocate). Under these circumstances, Fisher has not established a due process violation. His argument that his lay advocate did not meet Indiana Department of Correction ("IDOC") standards would not provide a basis for granting federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas relief is only available for a violation of the U.S. Constitution or other federal laws); *Hester v. McBride*, 966 F. Supp. 765, 775 (N.D. Ind. 1997) (alleged violation of IDOC policy in disciplinary proceeding could not support grant of habeas relief, since federal habeas court "does not sit to correct any errors of state law"). Accordingly, this claim is denied.

Fisher also claims that he was denied advance written notice of the charges because he was not properly screened. [ECF No. 1 at 5.] The respondent has submitted an affidavit from the screening officer, Victoria Taylor, who attests that she met with Fisher and screened him on the date reflected in the screening order, but that he could not sign the form because he was in the disciplinary segregation unit behind a plate of plexiglass. [ECF No. 13.] Fisher, by contrast, attests that Taylor never came to meet with him and that he instead received the conduct report and other documents through the prison mail. [ECF No. 16-2 at 2-3.] This dispute is irrelevant and need not be resolved.

The Due Process Clause does not entitle Fisher to a proper "screening"; it entitles him to advance written notice of the charges sufficient to "enable him to marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564. To satisfy due process, the notice must be given at least 24 hours in advance, must alert the inmate to the rule that he allegedly violated, and must summarize the facts underlying the charge. *Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003) (per curiam); *Whitford v. Boglino*, 63 F.3d 527, 534 (7th Cir. 1995). That standard is satisfied here. Fisher acknowledges in his petition that he received the conduct report through the mail prior to the hearing, which alerted

6

him to the rule allegedly violated and the facts underlying the charge. [*See* ECF No. 1 at 7; ECF No. 12-1.] He does not state exactly when he received it, but he makes clear it was before he submitted the request for evidence on October 7, 2011—a full seven days before the hearing. [ECF No. 1 at 7.] The correspondence he sent indicates that he was well aware of the facts underlying the charge the and individuals involved, and that he was able to request evidence he believed would support his defense. [*See* ECF No. 12-11 at 1-11.] The notice he received satisfied federal due process. To the extent Fisher is claiming that the screening officer somehow violated IDOC policy, this would not provide a basis for granting federal habeas relief. *Estelle*, 502 U.S. at 67-68. Accordingly, this claim is denied.

Fisher next claims that he was denied the right to present evidence and witnesses in his defense. [ECF No. 1 at 7.] A prisoner has a limited right to call witnesses and present documentary evidence in his defense consistent with correctional goals and safety. *Wolff*, 418 U.S. at 566. A hearing officer may deny a witness or evidence request that threatens institutional goals or is irrelevant, repetitive, or unnecessary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). The denial of the right to present evidence will be considered harmless unless the prisoner can show that the evidence could have aided his defense. *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011) (applying harmless error analysis to claim that inmate was denied opportunity to call witnesses); *Piggie*, 342 F.3d at 666 (same).

As an initial matter, it must be noted that Fisher created unnecessary confusion for the hearing officer by combining his request for evidence in this case with his request for evidence in the unrelated disciplinary case. [*See* ECF No. 12-11 at 1-11.] Despite this, the hearing officer parsed through his requests to try to discern what evidence might be relevant. She reviewed the video

7

evidence as he requested, but due to the darkness and location of the cameras it was neither inculpatory nor exculpatory. [ECF No. 12-9.] Indeed, Fisher does not argue that the video *was* exculpatory; he appears to believe some other staff member should have viewed the tape along with the hearing officer to verify its contents. [*See* ECF No. 1 at 5-6.] Due process did not require such action, since the video only needed to be reviewed by the decision-maker. *White v. Ind. Parole Bd.*, 266 F.3d 759, 768 (7th Cir. 2001) (where video was viewed by the decision-maker, inmate's right to exculpatory evidence was not violated). To the extent Fisher is claiming the hearing officer's review of the video somehow violated IDOC procedures, this would not present a cognizable basis for granting federal habeas relief. *Estelle*, 502 U.S. at 67-68.

Fisher also sought production of confidential information pertaining to "Security Threat Groups," specifically, a list of gang members in his cell block, their cell numbers, and information about offenses they committed while in prison. [ECF No. 12-11 at 11; ECF No. 12-10 at 2.] This request was reasonably denied for security reasons. [ECF No. 12-10 at 2.] A list of gang members deemed to be a threat to prison security, along with information about their exact location and offenses they committed while in prison (in some cases, no doubt, against other inmates) is highly sensitive and dangerous information. Among other things, such information could be used to target rival gang members or uncover gaps in prison security. *See Jones*, 637 F.3d at 848 (prison officials were not required to disclose evidence that would "entail a security risk"); *Piggie v. Cotton*, 344 F.3d 674, 678-79 (7th Cir. 2003) (prisons are permitted to deny requests for evidence that threaten institutional goals or safety). Furthermore, Fisher has not adequately explained how this information would have undermined the evidence that he assaulted Thompson. *See Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992) (due process only requires production of "exculpatory" evidence);

8

*see also Meeks v. McBride*, 81 F.3d 717, 721 (7th Cir. 1996) ("exculpatory evidence" in this context means evidence that "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt"). Based on the record, he has not established a violation of his federal due process rights.

Fisher's request for lie detector tests, DNA testing, and fingerprint evidence were also properly denied, because an inmate is not entitled to the creation of favorable evidence in a disciplinary proceeding. *See Outlaw v. Wilson*, No. 3:07cv54, 2007 WL 1295815, at *2 (N.D. Ind. Apr. 30, 2007) (inmate had no right to require creation of favorable evidence in the form of handwriting analysis or lie detector test results); *see also Freitas v. Auger*, 837 F.2d 806, 812 n.13 (8th Cir. 1988) (prisoners are not entitled to polygraph tests in disciplinary hearings); *Hester*, 966 F. Supp. at 773 (inmate had no due process right to require witnesses to undergo polygraph tests in prison disciplinary proceeding). Fisher appears to have envisioned the hearing proceeding like a criminal trial, but "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. The hearing officer was not required to conduct scientific testing or to prove beyond a reasonable doubt that he hit Thompson with the brick, only that there was some evidence to support the guilty finding. *See Hill*, 472 U.S. at 457.

Fisher also identified five correctional officers he wanted as witnesses. Prison officials are granted a "great deal of leeway" in addressing an inmate's requests for witnesses. *Whitlock v. Johnson*, 153 F.3d 380, 388 (7th Cir. 1998). An inmate's conditional right to call witnesses was not intended "to impose an onerous burden on prison officials in conducting disciplinary hearings, and the range of permissible reasons for denying a witness request is quite broad." *Id.* However, a prison

cannot categorically exclude all live witnesses or arbitrarily reject an inmate's request for a witness without any explanation. *See id.* (prison policy violated due process by categorically denying all live witnesses even when witness could be "arranged with relative ease"). That is not what occurred here. First, it is apparent that Fisher wanted to question one of the guards about the unrelated disciplinary charge [*see* ECF No. 12-11 at 3-4], which was irrelevant to the charge that he assaulted Thompson. *See Piggie*, 342 F.3d at 666. As for the other four guards, the hearing officer considered his request, but the guards were not available at the time of the hearing because they worked the night shift. [*See* ECF No. 12-10 at 2.] However, all four gave written statements which were considered by the hearing officer. [ECF No. 12-3.] Their statements were not exculpatory, and instead they described how Fisher was discovered fighting with Thompson, fled to another inmate's cube when ordered by a guard to stop, hid until he was discovered, and then fled to the bathroom. Their accounts also described how a bloody brick was found in the cell where the fight occurred, as well as bloody clothing with Fisher's name on it that he had tried to dispose of in the bathroom. [ECF No. 12-1; ECF No. 12-3 at 1-4.]

Although unclear, it appears Fisher wanted to cross-examine the officers about whether they actually saw him hit Thompson with the brick. [*See* ECF No. 12-11 at 1-8.] He had no constitutional right to do so. *Wolff*, 418 U.S. at 556. The formal rules of evidence do not apply at disciplinary proceedings, nor is there any right to confront or cross-examine adverse witnesses. *Id.*; *Piggie*, 342 F.3d at 666. Fisher was free to offer his own explanation of what occurred (although he apparently declined to do so), but he had no right to cross-examine the guards about what they saw. Furthermore, the record shows that the hearing officer was already well aware that no one had actually seen Fisher hit Thompson with the brick. [*See* ECF No. 12-10 at 1.] The hearing officer was

permitted to rely on circumstantial evidence to find Fisher guilty. *See Hamilton v. O'Leary*, 976 F.2d 341, 345 (7th Cir. 1992) (evidence showing constructive possession of weapon was sufficient to support disciplinary decision as item was found in a location where only a few inmates had access to it). Under these circumstances, any error in excluding these live witnesses was harmless. *Jones*, 637 F.3d at 847; *Piggie*, 342 F.3d at 666.

Fisher states in his traverse that he also wanted to obtain a statement from an inmate named "Johnson," and from the nurse who treated both him and Thompson following the fight, but there is no indication from the record that he requested such evidence during the hearing process. He cannot fault the hearing officer for failing to consider evidence he did not timely request. *Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002) (if an inmate fails to request exculpatory evidence "either before or at the hearing, then the CAB could not have denied him due process by not considering the request."). Furthermore, it appears he wanted these witnesses to help him show that Thompson was the aggressor in the fight and that he only acted in self-defense. [*See* ECF No. 1 at 5; ECF No. 1-2.] However, self-defense is not a valid defense in the prison disciplinary context, so these witnesses would not have helped him in any event. *See Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007) (inmates have no constitutional right to raise self-defense as a defense in prison disciplinary proceedings); *see also Jones*, 637 F.3d at 847 (inmate was not prejudiced by inability to call witness who would have testified that guard was aggressor in altercation, since he had no right to assert self-defense, and his admission that he pushed the guard made him guilty of assault). To the extent Fisher is claiming that he was denied evidence or witnesses in violation of IDOC policy, this would not provide a basis for granting federal habeas relief. *Estelle*, 502 U.S. at 67-68. Accordingly, his claim is denied.

Fisher next claims that there was insufficient evidence to support the hearing officer's guilty finding, specifically, that the hearing officer failed to establish his guilt "by a preponderance of the evidence." [ECF No. 1 at 9.] However, the relevant standard is whether there is *some* evidence to support the finding of guilt. *See Hill*, 472 U.S. at 457. This is not a high standard, and in determining the sufficiency of the evidence, "courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. The court will overturn a guilty finding based on insufficient evidence only if "no reasonable adjudicator could have found [the prisoner] guilty of the offense on the basis of the evidence presented." *Henderson v. United States Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994).

In this case, there is more than sufficient evidence to support the hearing officer's determination, including the conduct report, the witness statements from the officers, and the photos of the injury to Thompson's head. *See Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002) (witness statements constituted some evidence); *McPherson*, 188 F.3d at 786 (7th Cir. 1999) (conduct report provided some evidence to support disciplinary determination). To the extent Fisher is claiming he should not have been found guilty because there was no fingerprint evidence, DNA testing, or other direct evidence to show that he used the brick during the fight, such evidence was unnecessary to find him guilty. *Hamilton*, 976 F.2d at 345. Furthermore, it is not the province of this court to reweigh the evidence or make its own determination of the facts. *McPherson*, 188 F.3d at 786. The

question is simply whether there is some evidence to support the hearing officer's determination, and that standard is satisfied. Accordingly, this claim is denied.

Fisher also claims that the hearing officer's written statement was inadequate. [ECF No. 1 at 8.] The written statement requirement is "not onerous," and to satisfy due process "[t]he statement need only illuminate the evidentiary basis and reasoning behind the decision." *Scruggs*, 485 F.3d at 941. Here, the hearing officer stated that in reaching her decision she considered staff reports, witness statements, photos, and other evidence. [ECF No. 12-10 at 1.] She found him guilty, stating, "Even though a weapon was not found on Fisher, the extent of injuries and amount of blood at the scene makes me believe a weapon was involved. I believe the C/R to be true and accurate and therefore find him guilty. Fisher did make me aware he was injured in the altercation by showing me 4 stitches he received on his scalp." [*Id.*] Although this statement was not lengthy, it adequately identified the evidence relied on and her reasoning, specifically, that there was sufficient circumstantial evidence that Fisher hit Thompson with the brick. The written statement the hearing officer provided satisfied due process, and therefore this claim is denied.

Finally, giving the petition liberal construction, Fisher also claims that he was denied an impartial decision-maker. [ECF No. 1 at 5.] In the prison disciplinary context, adjudicators are "entitled to a presumption of honesty and integrity," and the constitutional standard for improper bias is high. *Piggie*, 342 F.3d at 666. Due process is violated if a prison official who is substantially involved in the underlying incident also acts as a decision-maker. *Id.*; *Whitford*, 63 F.3d at 534. Fisher does not allege that this occurred here, nor is there any indication from the record that the hearing officer was involved in any way in the underlying incident leading to the disciplinary charge. Accordingly, this claim is denied.

For these reasons, the petition [ECF No. 1] is DENIED.

SO ORDERED.

ENTERED: January 28, 2013

                                                    /s/ JON E. DEGUILIO
                                              Judge
                                              United States District Court